IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ANDREA C. WEATHERS,                    )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          1:12CV1059
                                       )
UNIVERSITY OF NORTH CAROLINA           )
AT CHAPEL HILL, HERBERT B.             )
PETERSON, in his individual            )
and official capacity,                 )
JONATHAN KOTCH, in his                 )
individual and official                )
capacity, BARBARA K. RIMER,            )
in her individual and official         )
capacity, EDWARD M. FOSTER, in         )
his individual and official            )
capacity, and SANDRA L.                )
MARTIN, in her individual and          )
Official capacity,                     )
                                       )
          Defendants.                  )


**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

     Presently before this court is Defendants' Motion to

Dismiss First Amended Complaint (Doc. 27).  Defendants have

filed a memorandum in support of their motion (Doc. 28),[1]

Plaintiff has filed a response in opposition (Doc. 30), and

Defendants have filed their reply (Doc. 33).  Defendants' motion

_____

     [1] Defendants have also incorporated the statement of facts
and arguments from their memorandum in support of their motion
to dismiss the original complaint (Doc. 19).

is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.

## I.   BACKGROUND

In November 2008, Dr. Andrea C. Weathers ("Plaintiff") filed suit in this court alleging that she was denied reappointment and tenure in 2007 as a result of Defendants' racially discriminatory conduct (civil case number 1:08CV847 - "Weathers I").  On November 18, 2010, this court granted Defendants' motion for summary judgment on all claims.  That decision was affirmed by the Fourth Circuit on appeal.  Weathers v. Univ. of N.C. at Chapel Hill, 447 F. App'x 508 (4th Cir. 2011), aff'g, No. 1:08CV847, 2010 WL 4791809 (M.D.N.C. Nov. 18, 2010).

In December 2011, Plaintiff discovered four documents among her files related to her reappointment process in 2004.  (First Amended Complaint ("First Am. Compl.") (Doc. 24) ¶ 35.)  Those documents include: (1) a letter from Defendant Kotch, who was the department chair at the time, addressed to Plaintiff and dated January 16, 2004, regarding her reappointment for a second term and stating that "a copy of the departmental review procedures that were approved and distributed October 30, 1996," was attached; (2) an enclosure titled "Memorandum" and dated October 30, 1996, that states "Please find enclosed the revised

-2-

reviewed procedures for faculty promotion which will be used in the department"; (3) a document titled "Department of Maternal and Child Health Revised Review Procedures for Faculty Promotion October 1996" ("1996 Departmental Policy"); and (4) an email dated February 4, 2004, from Sharon Bowers to Defendant Kotch, with a carbon copy to Ms. Bowers and Plaintiff, forwarding an email between Defendant Kotch and Ms. Bowers which references the 1996 Departmental Policy. (Id.)

According to the First Amended Complaint, these documents contradict statements made by Defendants in Weathers I regarding whether the 1996 Departmental Policy was an established policy governing applications for faculty promotion in the Department of Maternal and Child Health during Plaintiff's employment at Defendant UNC. (Id. ¶ 36.) Specifically, Defendants' reply brief in support of their motion for summary judgment stated that "there is no evidence that [the 1996 Departmental Policy] ever had any official status in [the Department of Maternal and Child Health], that the procedures described therein were ever followed or that [Plaintiff] would have complied with the procedures if they had been policy." (Defs.' Reply to Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Defs.' Reply Br.")

-3-

(Doc. 75) at 3 in civil case 1:08CV847.)[2]  In addition, the reply

brief noted that Defendant Peterson "did testify [in a

deposition] that he never implemented procedures and does not

know if they ever were implemented in [the Department of

Maternal and Child Health]."  (<u>Id.</u> at 2.)  Plaintiff contends

that the procedures used for her promotion application process

were at the heart of her prima facie case in <u>Weathers I</u>.  (First

Am. Compl. (Doc. 24) ¶ 37.)  Based on the foregoing, Plaintiff

alleges that Defendant UNC has "engaged in fraud on the court,

fraud and/or a material misstatement of the evidence in its

discovery materials, its evidentiary disclosure, and its court

filings."  (<u>Id.</u> ¶ 40.)

     Plaintiff's First Amended Complaint includes seven claims

for relief.  In her first two claims, Plaintiff seeks to set

aside the judgment in <u>Weathers I</u> pursuant to Federal Rule of

Civil Procedure 60(d) for fraud on the court and through an

independent action in equity.  Plaintiff also alleges new claims

against Defendant UNC and Defendants Peterson, Kotch, Rimer, and

Martin (collectively the "Individual Defendants") under the

following legal theories: (1) fraud, (2) negligent

misrepresentation, (3) civil conspiracy, (4) violations of 42

---

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

U.S.C. §§ 1981 and 1983, and (5) violations of her due process rights under the United States and North Carolina Constitutions.

## II.  LEGAL STANDARD

Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  For a claim to be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  When ruling on a Rule 12(b)(6) motion, a court must accept the complaint's factual allegations as true.  Id. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

## III. ANALYSIS

### Federal Rule of Civil Procedure 60(d)

Plaintiff first contends that she is entitled to equitable relief from the judgment in Weathers I under both a fraud on the court theory and through an independent action in equity. Federal Rule of Civil Procedure 60(d) recognizes the authority of federal courts to "entertain an independent action to relieve a party from a judgment, order, or proceeding," and to "set aside a judgment for fraud on the court." For the reasons that follow, this court finds that Plaintiff's claims for equitable relief should be dismissed.

"Not all fraud is 'fraud on the court.'" Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982). Fraud on the court "should be construed very narrowly," and "is typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." Id. "By contrast, perjury and fabricated evidence alone, being evils which can be exposed by the normal adversary process, do not constitute grounds for relief as 'fraud on the court.'" Rainwater v. Mallas, No. 94-1122, 1994 WL 712570, at *2 (4th Cir. Dec. 23, 1994) (per

-6-

curiam) (citing Great Coastal Express, 675 F.2d at 1357); see
also In re Genesys Data Techs., Inc., 204 F.3d 124, 130-31 (4th
Cir. 2000).

Similarly, independent actions are "reserved for those
cases of 'injustices which, in certain instances, are deemed
sufficiently gross to demand a departure' from rigid adherence
to the doctrine of res judicata." United States v. Beggerly,
524 U.S. 38, 46 (1998) (quoting Hazel-Atlas Glass Co. v.
Hartford-Empire Co., 322 U.S. 238, 244 (1944)); see also id. at
47 ("[A]n independent action should be available only to prevent
a grave miscarriage of justice."). Accordingly, independent
actions are subject to a "demanding standard," id., and "perjury
and false testimony are not grounds for relief in an independent
action in the Fourth Circuit for many of the same reasons that
apply to fraud on the court." Great Coastal Express, 675 F.2d
at 1358.

In support of her request to set aside the Weathers I
judgment, Plaintiff contends that the 1996 Departmental Policy
was produced late in discovery and only "after numerous
depositions and interrogatories denied time and again that this
document was ever adopted by Defendant UNC and that the
Department did not have a separate written policy on promotion
and tenure." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss

-7-

("Pl.'s Br.") (Doc. 30) at 2.)  However, Plaintiff has not directed this court to any of the "numerous depositions and interrogatories" denying that the document had ever been adopted.[3]  Instead, she relies on the statements in Defendants' summary judgment reply brief that there was no evidence the policy had ever been adopted and that Defendant Peterson testified that he did not know if the policy had ever been implemented.

For the following reasons, this court finds that the allegations in the First Amended Complaint do not satisfy the demanding standard for setting aside a judgment for fraud on the court or through an independent action.  First, allegations that an opposing party committed perjury or fabricated evidence in an earlier proceeding are generally insufficient to satisfy the requirements for fraud on the court or an independent action in

---

[3] Only Sue Cotcamp, the department's human resources administrator, and Defendant Peterson were asked about the 1996 Departmental Policy in their depositions.  There is no evidence that either Ms. Cotcamp or Defendant Peterson lied during these depositions.  Defendant Peterson testified that he recognized the document "as of a couple of weeks" before he was deposed. (Defs.' Reply Br., Deposition of Herbert B. Peterson, MD (Doc. 75-5) at 6-7 in civil case 1:08CV847.)  According to Defendant Peterson, he did not implement the 1996 Departmental Policy and he did not know if it had ever been implemented. (Id. at 7.) When asked if he had any evidence that the policy had not been implemented, Defendant Peterson responded that he did not have any evidence either that it had or had not been implemented and that he "never understood it as policy and ha[d] never used it as policy." (Id. at 8.)

equity. <u>Great Coastal Express</u>, 675 F.2d at 1358; <u>see also</u>
<u>George P. Reintjes Co. v. Riley Stoker Corp.</u>, 71 F.3d 44, 49
(1st Cir. 1995) ("In sum, perjury alone, absent allegation of
involvement by an officer of the court . . . , has never been
sufficient."); <u>cf.</u> <u>Hazel-Atlas Glass Co.</u>, 322 U.S. at 245 ("This
is not simply a case of a judgment obtained with the aid of a
witness who, on the basis of after-discovered evidence, is
believed possibly to have been guilty of perjury."). Although
"[i]nvolvement of an attorney, as an officer of the court, in a
scheme to suborn perjury would certainly be considered fraud on
the court," <u>Great Coastal Express</u>, 675 F.2d at 1357, the First
Amended Complaint does not allege that Defendants' counsel knew
whether the statements in the reply brief were false or that
counsel in any way sought to suborn the alleged perjurious
statements.

Second, this court finds that the allegations in the First
Amended Complaint do not show that it would be a "grave
miscarriage of justice" to allow the judgment to stand. <u>See</u>
<u>Beggerly</u>, 524 U.S. at 47. To establish a prima facie case of
discrimination in the denial of promotion and tenure, a
plaintiff must present evidence that: (1) she is a member of a
protected group, (2) she applied for promotion and tenure, (3)
she was qualified for promotion and tenure, and (4) she was

-9-

rejected under circumstances giving rise to an inference of unlawful discrimination.  Rowe v. N.C. Agric. & Technical State Univ., 630 F. Supp. 2d 601, 607 (M.D.N.C. 2009) (citing Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 928 F.2d 118, 121 (4th Cir. 1991)).

Despite Plaintiff's protests to the contrary, the 1996 Departmental Policy was not key to this court's resolution of the claims in Weathers I.  In Weathers I, this court held that Plaintiff failed to establish all but the first element of a prima facie case.  Even if the 1996 Departmental Policy was in effect during Plaintiff's 2007 reappointment and promotion application process, this court would still find Plaintiff failed to produce evidence that she applied for[4] and was qualified for promotion and tenure.  In opposing this conclusion, Plaintiff argues that an admission that the policy was in effect would have established her prima facie case for discrimination because Defendants' "proffered reason for not providing [Plaintiff] with two faculty advisors for her promotion process and definite dates and requirements for the promotion process, that is, that no policy required it, would

---

[4] This court held in Weathers I that Plaintiff did not submit an application for tenure in accordance with University requirements (1:08CV847, Mem. Op. & Order (Doc. 80) at 38).  The Fourth Circuit affirmed that holding.  (See 1:08CV847, Fourth Cir. Op. (Doc. 85) at 4-5.)

-10-

have been shown to be false, and a presumption would have arisen of unlawful discrimination." (Pl.'s Br. (Doc. 30) at 4-5.) However, this argument miscomprehends the McDonnell-Douglas framework. Had she had such an admission, Plaintiff would have been able to establish, at most, the first and fourth elements of her prima facie case. Accordingly, despite the alleged fraud, Plaintiff would not have prevailed on her prior claims even with evidence that the 1996 Departmental Policy had been in effect in 2007.

This court also notes the following additional factors militating against the request for equitable relief in this case: (1) the four documents on which Plaintiff relies have been in her possession since 2004; (2) those documents show, at most, that the 1996 Departmental Policy was in effect in 2004, which was prior to Defendant Peterson's tenure as department chair; and (3) Plaintiff was already able to argue in her response to Defendants' motion for summary judgment in Weathers I that "the most disturbing aspect" of the case was that "there was a written Department policy that was purposely withheld from Plaintiff that would have provided Plaintiff with two mentors for her application process and provided her advance warning of the Department's deadlines, along with other information."

(Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 72) at 9 in civil case 1:08CV847.)

Accordingly, Plaintiff has not made a colorable claim of fraud, and this court will dismiss her claims for Rule 60(d) relief.

## New Claims

Plaintiff also alleges new claims against Defendant UNC and the Individual Defendants[5] under the following legal theories: (1) fraud, (2) negligent misrepresentation, (3) civil conspiracy, (4) violations of 42 U.S.C. §§ 1981 and 1983, and (5) violations of her due process rights under the United States and North Carolina Constitutions. These claims arise from several alleged fraudulent statements, misrepresentations, and nondisclosures, some of which occurred while Plaintiff was still employed by Defendant UNC and others which occurred during the Weathers I litigation. First, Plaintiff alleges that Defendant UNC and the Individual Defendants failed to inform her of the 1996 Departmental Policy during her 2007 promotion application process and wrongfully claimed to use some other policy that had not been adopted by the Department of Maternal and Child Health. (First Am. Compl. (Doc. 24) ¶¶ 66, 70, 72; see also ¶¶ 91, 95.) Second, she contends that Defendant UNC and the Individual

---

[5] The Individual Defendants are sued in both their official and individual capacities.

Defendants fraudulently claimed in discovery and during depositions that the 1996 Departmental Policy was not in effect during Plaintiff's 2007 reappointment application process.  (Id. ¶ 66.)  Third, Plaintiff alleges that Defendant UNC and the Individual Defendants conspired to commit an unspecified unlawful act, presumably fraud.[6]  For the reasons that follow, this court finds that each of these claims should be dismissed.

**Res Judicata**

Defendants assert the affirmative defense of res judicata based on the judgment in Weathers I.  To the extent Plaintiff's new claims arise from alleged actions or inactions during her promotion application process, those claims are barred by the doctrine of res judicata.  "A party invoking res judicata must establish three elements: (1) a previous final judgment on the merits, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."  Union Carbide Corp. v. Richards, 721 F.3d 307, 314-15 (4th Cir. 2013).

"[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises

---

[6] The conspiracy claim does not reallege or incorporate the allegations in Plaintiff's statutory and constitutional claims, which appear later in the First Amended Complaint.

-13-

no disputed issue of fact." Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Although she disagrees with this court's decision in Weathers I, Plaintiff has not disputed the accuracy of the record in that case. Accordingly, where relevant, this court takes judicial notice of those proceedings.

It is undisputed that the first and third elements for res judicata are present in this case. Thus, the only issue is whether there is "an identity of the cause of action." "The determination of whether two suits arise out of the same cause of action . . . turns on whether the suits and claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" Pueschel v. United States, 369 F.3d 345, 355 (4th Cir. 2004) (quoting In re Varat Enters., Inc., 81 F.3d 1310, 1316 (4th Cir. 1996)). Claims may satisfy this standard "even if they involve different harms or different theories or measures of relief." Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986). "Among the factors to be considered in deciding whether the facts of the current and prior claims 'are so woven together' that they constitute a single claim 'are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'" Pittston Co. v. United

States, 199 F.3d 694, 704 (4th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)).

Plaintiff contends that the allegations underlying her new claims are "different in time and nature" than those alleged in Weathers I and that she "did not have a fair opportunity to litigate" those issues because she "was not aware of them" at the time of Weathers I. (Pl.'s Br. (Doc. 30) at 6.) However, this court finds that the alleged misrepresentations and nondisclosures during Plaintiff's promotion application process are "so woven together" with the claims in Weathers I that "they form a convenient unit for trial purposes." In Weathers I, Plaintiff alleged that she was denied reappointment and tenure as a result of Defendants' racially discriminatory conduct. Her new claims based on the alleged misconduct of Defendant UNC and the Individual Defendants during that process are clearly based on the same core of operative facts as her claims in Weathers I.

This court also rejects Plaintiff's argument that res judicata cannot bar her new claims because she did not become aware of them until after the judgment in Weathers I. "For purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." Harnett, 800 F.2d at

-15-

1313; see also Keith v. Aldridge, 900 F.2d 736, 740 n.5 (4th
Cir. 1990).

However, Plaintiff's new claims are not barred by res
judicata to the extent they are based on alleged post-complaint
conduct. "The federal rule is that claim preclusion generally
does not bar a subsequent lawsuit for issues that arise after
the operative complaint is filed." Ellis v. CCA of Tenn. LLC,
650 F.3d 640, 652 (7th Cir. 2011); see also Rawe v. Liberty Mut.
Fire Ins. Co., 462 F.3d 521, 530 (6th Cir. 2006); Mitchell v.
City of Moore, Okla., 218 F.3d 1190, 1202 (10th Cir. 2000)
("[W]e agree with those courts holding the doctrine of claim
preclusion does not necessarily bar plaintiffs from litigating
claims based on conduct that occurred after the initial
complaint was filed."); Manning v. City of Auburn, 953 F.2d
1355, 1360 (11th Cir. 1992); 18 Charles Alan Wright, Arthur R.
Miller & Edward H. Cooper, Federal Practice and Procedure § 4409
(2d ed. 2002) ("Most cases rule that an action need include only
the portions of the claim due at the time of commencing that
action, frequently observing that the opportunity to file a
supplemental complaint is not an obligation."). In Weathers I,
the operative complaint was filed on February 2, 2009. (See
Verified Second Am. Civil Compl. (Doc. 29) in civil case

1:08CV847.)  Accordingly, res judicata does not bar any claims that were not ripe as of that date.

Based on the foregoing, each of Plaintiff's new claims should be dismissed to the extent it is based on alleged misconduct during Plaintiff's reappointment and tenure application process.  Because the misrepresentation claim is based on the allegation that Defendant UNC and the Individual Defendants negligently provided information to Plaintiff in preparation for her promotion application process, it will be dismissed in whole.  The other claims will be dismissed only in part on res judicata grounds.

**Fraud and Civil Conspiracy Claims**

This court will also dismiss the remainder of the fraud claim and the civil conspiracy claim.  It is "well established in North Carolina that neither perjury nor subornation of perjury may form the basis for a civil action."  Gilmore v. Gilmore, No. COA12-1426, 2013 WL 4714331 (N.C. App. Sept. 3, 2013); see also Gillikin v. Springle, 254 N.C. 240, 243, 118 S.E.2d 611, 614 (1961) ("Perjured testimony and the subornation of perjured testimony are criminal offenses, but neither are torts supporting a civil action for damages." (citations omitted)); Brewer v. Carolina Coach Co., 253 N.C. 257, 262, 116 S.E.2d 725, 728 (1960); Godette v. Gaskill, 151 N.C. 52, 65 S.E.

-17-

612 (1909); <u>Hawkins v. Webster</u>, 78 N.C. App. 589, 592, 337 S.E.2d 682, 684 (1985) ("A civil action may not be maintained for a conspiracy to give false testimony."). Accordingly, Plaintiff's claims for fraud and civil conspiracy based on the alleged litigation misconduct of Defendant UNC and the Individual Defendants will be dismissed.

### 42 U.S.C. §§ 1981 and 1983

This court also dismisses Plaintiff's Sixth Cause of Action. In that claim, which is pursued under 42 U.S.C. §§ 1981 and 1983, Plaintiff alleges that the actions of Defendant UNC and the Individual Defendants were "done as retaliation against [Plaintiff] for filing her Second Amended Complaint [in <u>Weathers I</u>], as further acts of unlawful racially discriminatory conduct, and/or for some other unlawful purpose." (First Am. Compl. (Doc. 24) ¶ 83.) Section 1981 "prohibits racial discrimination in the making and enforcement of contracts." <u>Runyon v. McCrary</u>, 427 U.S. 160, 168 (1976); <u>Aleman v. Chugach Support Servs., Inc.</u>, 485 F.3d 206, 208 (4th Cir. 2007). Plaintiff's basis for her Sixth Cause of Action is not entirely clear, but the First Amended Complaint recognizes that § 1981 "prohibits all forms of racial discrimination in employment, including discrimination in hiring and firing, promotions and demotions, transfers, unequal pay, racial harassment, and other discrimination in the terms

-18-

and conditions of employment." (First Am. Compl. (Doc. 24)
¶ 85.) To the extent Plaintiff seeks to recover for alleged
racial discrimination <u>during</u> her employment at Defendant UNC,
her claim is barred by res judicata. To the extent she seeks to
recover for alleged conduct <u>after</u> her employment, this court is
uncertain, and the Complaint fails to allege, how Defendant UNC
and the Individual Defendants are alleged to have impaired any
of her § 1981 rights.

**Due Process Claims**

Finally, this court will dismiss Plaintiff's Seventh Cause
of Action, which alleges violations of her due process rights
under the United States and North Carolina Constitutions.[7] The
Fourteenth Amendment does not create a direct cause of action.
<u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995).

---

[7] This court notes that direct claims under the North
Carolina Constitution may only be brought against the Individual
Defendants in their official capacities. <u>See</u> <u>Love-Lane v.</u>
<u>Martin</u>, 355 F.3d 766, 789 (4th Cir. 2004). This court leaves
open the question of whether there is an "adequate state remedy"
that would prevent Plaintiff from pursuing a direct claim under
the North Carolina Constitution. <u>See</u> <u>Craig ex rel. Craig v. New</u>
<u>Hanover Cnty. Bd. of Educ.</u>, 363 N.C. 334, 338, 678 S.E.2d 351,
354 (2009); <u>Corum v. Univ. of N.C.</u>, 330 N.C. 761, 782, 413
S.E.2d 276, 289 (1992).

Defendants have not yet asserted Eleventh Amendment
immunity, and this court will not address the issue sua sponte.
<u>See</u> <u>Wis. Dep't of Corr. v. Schacht</u>, 524 U.S. 381, 389 (1998)
("Unless the State raises the matter, a court can ignore it.");
<u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411
F.3d 474, 481 (4th Cir. 2005) ("Eleventh Amendment immunity need
not be raised by a court <u>sua sponte</u>.").

-19-

"Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment." Costello v. Univ. of N.C. at Greensboro, 394 F. Supp. 2d 752, 759 (M.D.N.C. 2005) (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-20 (1992)). Therefore, this court will construe Plaintiff's federal due process claim as a § 1983 claim.

To prevail on a § 1983 claim, plaintiffs "must show that (1) they were deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Here, Plaintiff has alleged that her right to due process was violated. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

The North Carolina Constitution's law of the land clause guarantees "due process rights separate from, though similar to, those guaranteed by the federal constitution." Ware v. Fort, 124 N.C. App. 613, 616, 478 S.E.2d 218, 220-21 (1996) (citing N.C. Const. art. I, § 19); see also McNeill v. Harnett Cnty., 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990) (decisions

interpreting the federal Due Process Clause, "although persuasive, do not control an interpretation . . . of the law of the land clause"). The clause states that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19.

Plaintiff's due process claim is based on the same allegations of "fraud on the court, fraud, misrepresentation, and conspiracy" as her other claims. (First Am. Compl. (Doc. 24) ¶ 95.) For several reasons, these allegations fail to state a due process claim under either the United States Constitution or the North Carolina Constitution.

First, it is unclear from the First Amended Complaint whether Plaintiff claims that Defendant UNC and the Individual Defendants denied her procedural due process, substantive due process, or both; however, under either theory, Plaintiff must allege that she was deprived of a protected interest in life, liberty, or property. See Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 826-27 (4th Cir. 1995) (elements of procedural and substantive due process claims); Kilcoyne v. Morgan, 664 F.2d 940, 942 (4th Cir. 1981) (per curiam) ("Invocation of the Fourteenth Amendment's due process guarantees required [the plaintiff] to show that the State had deprived him of a protected liberty or property interest." (footnote omitted));

-21-

Toomer v. Garrett, 155 N.C. App. 462, 469, 574 S.E.2d 76, 84 (2002) ("In general, substantive due process protects the public from government action that unreasonably deprives them of a liberty or property interest."). Plaintiff has failed to do so.[8]

Second, Plaintiff's constitutional claim is principally based on her allegation that Defendant UNC and the Individual Defendants fraudulently claimed in "discovery and during sworn depositions that the 1996 Departmental Policy was not in effect at the time of Plaintiff's application for promotion." (First Am. Compl. (Doc. 24) ¶ 66.) Even assuming she would otherwise be able to state a claim for relief, Plaintiff has not identified any allegedly fraudulent statement from either discovery responses or a deposition other than the summary of Defendant Peterson's deposition testimony included in Defendants' summary judgment reply brief.

Third, even if there were such false statements, this court did not rely on those statements in ruling on Defendants' motion for summary judgment in Weathers I. As addressed above, this

---

[8] Plaintiff did not have a protected property interest in continued employment with Defendant UNC. See Kilcoyne, 664 F.2d at 942 ("Because he lacked a right to further employment at [the university], his denial of tenure and further employment without any procedural safeguards would have been permissible under the Fourteenth Amendment."); Ware, 124 N.C. App. at 617, 478 S.E.2d at 221 (finding that a university professor who was not reappointed "had no property right in the position of which he could be constitutionally deprived – under either the North Carolina or federal constitutions").

court's ruling was based on its determination that Plaintiff had failed to establish a prima facie case of discrimination. The result would have been the same whether or not the 1996 Departmental Policy was in effect during Plaintiff's tenure application process. Accordingly, there was no "causal relationship" between the alleged fraudulent or perjurious statements and this court's ruling in <u>Weathers I</u>. See <u>Myers v. Bull</u>, 599 F.2d 863, 866 (8th Cir. 1979) (per curiam) ("Absent some showing that the alleged perjurious deposition had some causal relationship to appellant's conviction, he has failed to state a claim upon which relief can be granted."). Therefore, Plaintiff's Seventh Cause of Action will be dismissed.

## IV.  CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss First Amended Complaint (Doc. 27) is **GRANTED.**[9]  **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is **DENIED** as **MOOT.**

---

[9] This court has addressed Defendants' motion and this case on the merits even though the parties have not addressed or argued the authority of this court to grant full relief. The Fourth Circuit in <u>Weathers I</u> affirmed this court's judgment and the mandate was issued. Nevertheless, this court does find it appropriate to proceed. Similar to the procedure outlined in <u>Fobian v. Storage Tech. Corp.</u>, 164 F.3d 887 (4th Cir. 1999) (addressing Fed. R. Civ. P. 60(b) motions rather than 60(d)), this court finds that Plaintiff has not established a claim upon which this court's prior judgment should be set aside.

-23-

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 30th day of September, 2013.

_____
United States District Judge